UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FREEDOM MORTGAGE CORPORATION,

                      Plaintiff,

          v.

JORGE TREJO, MARIBEL TREJO, BOARD OF
MANAGERS OF WILLOWBROOK HEIGHTS
CONDOMINIUM ASSOCIATION, NEW YORK
CITY PARKING VIOLATIONS BUREAU, NEW
YORK CITY ENVIRONMENTAL CONTROL
BOARD, NEW YORK CITY TRANSIT
ADJUDICATION BUREAU AND JOHN DOE #1
THROUGH JOHN DOE #10, THE LAST TEN
NAMES BEING FICTITIOUS AND UNKNOWN TO
THE PLAINTIFF, THE PERSON OR PARTIES
INTENDED BEING THE PERSONS OR PARTIES,
IF ANY, HAVING OR CLAIMING AN INTEREST
IN OR LIEN UPON THE MORTGAGE PREMISES
DESCRIBED IN THE COMPLAINT,

                      Defendants.
------------------------------------------------------------------X

**SUPPLEMENTAL AND
AMENDED REPORT
AND RECOMMENDATION**

22-CV-7116
(Gujarati, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      On November 22, 2022, Plaintiff Freedom Mortgage Corporation initiated this foreclosure

action against Defendants—Jorge Trejo and Maribel Trejo (the "Trejos"), the New York City

Parking Violations Bureau ("PVB"), the New York City Environmental Control Board ("ECB"),

and the New York City Transit Adjudication Bureau ("TAB")—to foreclose on the residential

property located at 105 Cortlandt Street, Staten Island, New York 10302 (the "Property").  Dkt.

No. 1 ¶¶ 7-8.[1]

---

[1] The Board of Managers of Willowbrook Heights Condominium Association and John Doe #1-10 were
voluntarily dismissed from this action on July 31, 2023.  *See* Dkt. No. 19.  This Court respectfully
recommends that the Clerk of Court amend the case caption to reflect the voluntary dismissal of these
defendants.  *See United States v. Edwards*, 241 F.R.D. 146, 148 (E.D.N.Y. 2007) (collecting cases for the
premise that amendments to a case caption to make technical changes are generally permissible).

Currently pending before this Court, on a referral from the Honorable Diane Gujarati, United States District Judge, is Plaintiff's motion for default judgment and judgment of foreclosure and sale. *See* Dkt. No. 23; *see also* Nov. 21, 2023 Referral Order.

On April 3, 2024, this Court issued a Report and Recommendation recommending that Plaintiff's motion for default judgment be granted in part and denied in part. *See* Dkt. No. 25. This Court recommended that Plaintiff's motion be denied against the Trejos because Plaintiff failed to comply with Local Civil Rule[2] 55.2(c) and New York Real Property Actions & Proceedings Law ("RPAPL") § 1304. *See id.* at 5-8. Specifically, Plaintiff failed to provide sufficient information to establish that the Property is the Trejos' last known residence, and thus, Plaintiff could not establish compliance with Local Civil Rule 55.2(c)'s mailing requirement or RPAPL § 1304's service requirement. *See id.* at 6-9.

On April 16, 2024, Plaintiff timely objected to the Report and Recommendation. *See* Dkt. No. 27. As part of the objection, Plaintiff attached, *inter alia*, a supplemental documentation from Lorri Beltz, the Vice President of Freedom Mortgage (the "Beltz Declaration"), that purports to establish the Trejos' last-known residence. *See* Dkt. No. 27-1.

On July 17, 2024, the Court entered the following order:

> In light of the objections filed by Plaintiff, to which a declaration that was not before Magistrate Judge Joseph A. Marutollo when he issued the [] Report and Recommendation is attached, *see* ECF No. 27; ECF No. 27-1, the Court recommits the matter to Judge Marutollo for a supplemental and/or amended report and recommendation. *See* 28 U.S.C § 636(b)(1)(C).

July 17, 2024 Dkt. Order.

---

[2] The Local Rules of the United States District Court for the Southern and Eastern Districts of New York were updated on July 1, 2024. As set forth in Local Rule 1.1, "[t]hese Local Civil Rules take effect on July 1, 2024 [] and govern actions pending or filed on or after that date. For actions pending on the Effective Date, if fewer than 14 days remain to perform an action governed by these Rules, the provisions of the previous Local Rules effective on June 30, 2024 will govern." Thus, the previous Local Rules remain applicable here.

In light of the current procedural posture, the undersigned therefore issues this Supplemental and Amended Report and Recommendation.    For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion for default judgment be granted in part and denied in part.    This Supplemental and Amended Report and Recommendation supersedes the Report and Recommendation issued on April 3, 2024 at Dkt. No. 25.

## I.    **Background**

### A.    **Factual Allegations**

The following facts are taken from the complaint, Plaintiff's motion, and the attachments filed in support of Plaintiff's motion; the facts are assumed to be true for the purposes of this motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor); *see also BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704 (E.D.N.Y. Dec. 22, 2023), *report and recommendation adopted*, Text Order (E.D.N.Y. Jan. 9, 2024) (same); *Doe v. Hyassat*, No. 18-CV-6110 (PGG) (OTW), 2024 WL 1955354 (S.D.N.Y. May 3, 2024) (same).

On June 28, 2018, Defendant Jorge Trejo executed a Note (the "Note") with Plaintiff wherein he promised to pay $402,014.00 plus interest on the unpaid amount due.  *See* Dkt. No. 1 ¶ 6; Dkt. No. 1-3.  To secure the Note, the Trejos executed a mortgage (the "Mortgage") with Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Plaintiff, on the Property.  Dkt. No. 1 ¶¶ 7-8; Dkt. No. 1-4.  The Mortgage was assigned to Plaintiff on December 20, 2019.  Dkt. No. 1 ¶ 8; Dkt. No. 1-5.

On December 17, 2021, Plaintiff and the Trejos entered into an agreement to amend and supplement the Note and Mortgage (the "Loan Modification Agreement").  Dkt. No. 1 ¶ 9; Dkt.

No. 1-6.  According to the terms of the Loan Modification Agreement, the new principal balance due on the Note was $400,529.27.  Dkt. No. 1 ¶ 9; Dkt. No. 1-6 § 3(B).

On April 1, 2022, Jorge Trejo allegedly defaulted on the Note by failing to make the monthly payments due.  Dkt. No. 1 ¶ 10.  Since then, the Trejos have not made any subsequent payments towards the Note.  *Id.* ¶¶ 10-11.  As of November 22, 2022, the "amount due and owing on the Note and Mortgage" consisted of $399,152.89 in principal; interest that has accrued at a 3% rate since March 1, 2022; and "late charges, monies advanced for taxes, assessments, insurance, maintenance and preservation of the Property, and the cost, allowances, expenses of sale, and reasonable attorney's fees for the foreclosure."  *Id.* ¶ 11.

### B.    Procedural History

Plaintiff filed the complaint on November 22, 2022, seeking to foreclose on the Property pursuant to RPAPL § 1301 *et seq.  See generally* Dkt. No. 1.  In addition to the Trejos, Plaintiff names as defendants the PVB, the ECB, and the TAB (collectively, "City Defendants"), each of whom Plaintiff alleges have "some interest in or lien upon" the Property that is subordinate to the Mortgage.  *Id.* ¶ 3; Dkt. No. 1-2.

On April 4, 2023, Plaintiff served PVB and ECB with the summons and complaint at the Office of the Corporation Counsel, New York City Law Department.  Dkt. No. 14.  On April 5, 2023, Plaintiff served the Trejos with the summons and complaint via substituted service on "Jane Doe (Refused Name), Family Member" at the Property.  Dkt. No. 15.  Plaintiff also mailed a copy to the Trejos at the Property.  Dkt. No. 16.  On April 6, 2023, Plaintiff served TAB with the summons and complaint at 130 Livingston Street, Brooklyn, New York 11201.  Dkt. No. 14.

On August 10, 2023, Plaintiff requested a certificate of default against Defendants based on their failure to answer or otherwise defend against the complaint.  Dkt. No. 20.  The Clerk of

Court granted Plaintiff's request and entered a certificate of default against Defendants on August 16, 2023. Dkt. No. 21.

On November 20, 2023, Plaintiff filed the current motion for default judgment. Dkt. No. 23. In support of this motion, Plaintiff submits: (1) a proposed order (Dkt. No. 23-1); (2) a memorandum of law (Dkt. No. 23-2); (3) the affidavit of Heather Marie Diaz, a "FCL Specialist III" employed by Plaintiff (the "Diaz Affidavit") (Dkt. No. 23-3); (4) a declaration from Plaintiff's counsel, Robert Tremaroli, Esq., with exhibits (Dkt. No. 23-4 – 23-20), which include the complaint (Dkt. No. 23-7) and certificate of default (Dkt. No. 23-15); and (5) an affidavit of service of the motion (Dkt. No. 24).

As noted above, on April 3, 2024, this Court issued a Report and Recommendation recommending that Plaintiff's motion for default judgment be granted in part and denied in part. Dkt. No. 25. This Court recommended that Plaintiff's motion be denied against the Trejos due to Plaintiff's failure to comply with Local Civil Rule 55.2(c) and RPAPL § 1304. This Court further recommended that Plaintiff's motion be granted against PVB, but denied against ECB and TAB because the complaint failed to establish their nominal liability.

On April 16, 2024, Plaintiff timely objected to the Report and Recommendation, as well as providing supplemental documentation to establish the Trejos' last known residence. *See* Dkt. Nos. 27, 27-1. As set forth in Plaintiff's objection, Plaintiff "consents to the dismissal of [] ECB and [] TAB, as said parties do not currently show any lien of record." Dkt. No. 27 at 1. Additionally, and as noted above, Plaintiff attaches the Beltz Declaration to its objection. Dkt. No. 27-1.

On July 17, 2024, the Court entered an order "recommit[ting] the matter to [the undersigned] for a supplemental and/or amended report and recommendation. See 28 U.S.C § 636(b)(1)(C)." *See* July 17, 2024 Dkt. Order.

## II.    Legal Standard for Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *see Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) ("[W]hen a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)). "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Esquivel*, 2023 WL 6338666, at *3 (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound*

*Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).  The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that the court can infer a defendant's liability.  *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)).  A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established."  *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (internal quotations and citation omitted).  The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt."  *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010).

## III.    <u>Jurisdiction and Venue</u>

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants."  *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*,

629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### A.    Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because Plaintiff is a resident of New Jersey, Defendants are residents of New York, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. *See* 28 U.S.C. § 1332; *see also* Dkt. No. 1 ¶¶ 2, 4; Dkt. No. 1-2.

### B.    Personal Jurisdiction

"A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *BASF Corp.*, 2023 WL 8853704, at *5 (internal quotations and citation omitted).

Here, Plaintiff properly served the Trejos at the Property by leaving a copy of the summons and complaint with a person who also resides there and by mailing copies to the Property by first-class mail. *See* Dkt. Nos. 15-16; *see also* Fed. R. Civ. P. 4(e)(2)(B), CPLR § 308(2); *see also* Dkt. No. 27-1 (declaring that the Trejos reside at the Property).

Plaintiff also properly served PVB and ECB by delivering copies of the summons and complaint to the Office of the Corporation Counsel, and Plaintiff properly served TAB via its authorized agent.[3] Dkt. No. 14; *see also* Fed. R. Civ. P. 4(j)(2)(A)–(B); CPLR § 311(a)(2).

---

[3] City Defendants are New York City agencies and non-suable governmental entities. *See* NYC Charter § 396 ("All actions . . . shall be brought in the name of the city of New York and not in that of any agency[.]"). Thus, when an action is brought against PVB, ECB, or TAB, the Court construes the action as one against the City of New York. *Miss Jones, LLC v. Viera*, No. 18-CV-1398 (NGG) (SJB), 2018 WL 11467906, at *1 (E.D.N.Y. Dec. 7, 2018); *Thompson v. Grey*, No. 08-CV-4499 (JBW), 2009 WL 2707397, at *5 (E.D.N.Y. Aug. 26, 2009), *aff'd*, 385 F. App'x 54 (2d Cir. 2010); *Alleva v. New York City Dep't of Investigation*, 696 F. Supp. 2d 273, 276 n.2 (E.D.N.Y. 2010), *aff'd*, 413 F. App'x 361 (2d Cir. 2011).

Accordingly, the Court has personal jurisdiction over Defendants.

### C.    Venue

"[A] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1). Here, all Defendants reside in New York (Dkt. No. 1-2) and venue is therefore proper in this district.

### IV.    <u>Procedural Compliance with Local Civil Rules 7.1 and 55.2</u>

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  *Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotations and citation omitted).

Under Local Civil Rule 7.1, a motion for default judgment must consist of a notice of motion, a memorandum of law, and supporting affidavits and exhibits containing any factual information and portions of the record necessary for the decision of the motion.  Loc. Civ. R. 7.1(a).  Under Local Civil Rule 55.2, a "party seeking a judgment by default . . . shall append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment," and must mail these three items to

the "last known residence" of the defaulting party (if an individual) or "the last known business

address of such party (if a person other than an individual)."  Loc. Civ. R. 55.2(b)-(c).

Plaintiff has established compliance with Local Civil Rules 7.1 and 55.2(b).  The motion

includes a notice of motion, memorandum of law, and copies of the complaint, certificate of

default, and proposed form of default judgment.  *See* Dkt. No. 23.

Additionally, Plaintiff has now complied with Local Civil Rule 55.2(c).  According to

Plaintiff's affidavit of service, it mailed a copy of the motion to City Defendants at their last known

business addresses.  *See* Dkt. No. 24.  Plaintiff also mailed a copy of the motion to the Trejos at

the Property, which Plaintiff affirms is the Trejos' last known residential address.  *Id.*; *see also*

Dkt. No. 27-1.  The Court now credits Plaintiff's assertion that the Property is indeed the Trejos'

last known residential address.  Plaintiff argues that the Trejos purchased the Property with the

expressed intent of residing there, as evidenced by their uniform residential loan application, dated

October 30, 2018, and an occupancy agreement, dated June 28, 2018.  Dkt. No. 27-1, at 2; *id.* at

5, 11.  Although it appears that only Jorge Trejo and a non-party (Layda Trejo) signed the loan

application (*id.* at 5), the application indicates that the Property will be used as a "primary

residence."  *Id.*  Further, Jorge Trejo signed the occupancy agreement which indicates that he will

occupy the Property during the 12-month period immediately following closing.  *Id.* at 11.  In

addition, pursuant to the terms of the Mortgage, dated June 28, 2018, the Trejos agreed to occupy

the Property within 60 days and live there for one year.  *Id.* at 2; Dkt. No. 1-4.  They also agreed

that the Property would serve as their notice address and that they would update Plaintiff if their

address changed.  Dkt. No. 27-1 ¶ 5; Dkt. No. 1-4.  According to the Beltz Declaration, the Property

is the only address associated with the Trejos on file with Plaintiff, and had the Trejos sent Plaintiff

an address-change notice, Plaintiff would have promptly updated its records in accordance with its standard practices and procedures.  Dkt. No. 27-1, at 2-3.

This Court therefore finds that Plaintiff has presented sufficient evidence to establish that the Property is the Trejos' last known residential address.  *See Dominguez v. Hernandez*, No. 21-CV-7051 (MKB) (VMS), 2023 WL 2575224, at *16 (E.D.N.Y. Feb. 22, 2023) ("A plaintiff must provide some evidence that the addresses used for service of the motion for default" is the last known residential address of an individual defendant), *report and recommendation adopted*, 2023 WL 2574876 (E.D.N.Y. Mar. 20, 2023).

Accordingly, Plaintiff has complied with Local Civil Rules 7.1 and 55.2

## V.    Compliance with the Servicemembers' Civil Service Relief Act

The Servicemembers Civil Relief Act ("SCRA") requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered."  *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012).  "The court lacks the power to excuse compliance with th[is] statute."  *Uribe v. Nieves*, No. 17-CV-5155 (RRM) (RER), 2018 WL 4861377, at *1 (E.D.N.Y. Sept. 26, 2018).

Here, Plaintiff attaches two reports from Sam Yousefzadeh, Director of the Manpower Data Center at the Department of Defense, which indicate that the Trejos were not on active duty

at the time of default. *See* Dkt. No. 23-13. This is sufficient to establish compliance with 50 U.S.C. § 3931. *See Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 375647, at *5 n.3 (E.D.N.Y. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023).

## VI.   <u>Liability</u>

### A.   **Mortgagor Liability**

"Under New York law, a plaintiff seeking to foreclose upon a mortgage must demonstrate the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment on the loan secured by the mortgage." *Windward Bora, LLC v. Brown*, No. 21-CV-03147 (KAM) (RER), 2022 WL 875100, at *3 (E.D.N.Y. Mar. 24, 2022) (internal quotation marks and citation omitted). "[O]nce a plaintiff mortgagee in a foreclosure action has established a *prima facie* case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *United States v. Watts*, No. 13-CV-3211 (ADS) (WDW), 2014 WL 4275628, at *2 (E.D.N.Y. May 28, 2014) (citations omitted), *report and recommendation adopted*, 2014 WL 4293815 (E.D.N.Y. Aug. 28, 2014).

Plaintiff, through its complaint and supporting documents, has established a *prima facie* entitlement to a default judgment against the Trejos. First, Plaintiff has established the existence of the Mortgage and the Note. *See* Dkt. No. 1-3 (Note); Dkt. No. 1-4 (Mortgage). The Note was signed by Jorge Trejo and delivered to Plaintiff. *See* Dkt. 1 ¶ 6; Dkt. No. 1-3, at 2. The Mortgage covers the Property, was signed by the Trejos, and recorded in the Richmond County Clerk's Office on July 12, 2018. *See* Dkt. No. 1 ¶ 7; Dkt No. 1-4.

Second, Plaintiff has established ownership of the Note prior to November 22, 2022, the date in which this action was commenced. *See* Dkt. No. 1 ¶ 6. The Note is endorsed to Plaintiff and grants Plaintiff the right to enforce the corresponding Mortgage and to initiate the foreclosure action. *See* Dkt. No. 1-3; *see also E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) ("[T]o establish standing on physical possession of a note, a plaintiff must show (1) possession of the note, either indorsed in blank or specially indorsed to the plaintiff, at the time the action was commenced; and (2) that the note was received by physical delivery." (citation omitted)); *In re Escobar*, 457 B.R. 229, 239-40, n.10 (Bankr. E.D.N.Y. 2011) (finding under New York law that the owner or holder of the promissory note holds the rights to enforce the associated mortgage and to commence a foreclosure action (citing *Deutsche Bank Nat'l Trust Co. v. Pietranico*, 928 N.Y.S.2d 818 (2011)). Plaintiff has also established that it is the owner of the Mortgage by submitting the assignment showing that the Mortgage was transferred to Plaintiff. *See* Dkt. No. 1 ¶ 8; Dkt. Nos. 1-4 – 1-5.

Third, Plaintiff has established that Jorge Trejo defaulted on the Note by failing to make the contractually required payments. Section 6(B) of the Note states, "If [borrower] do[es] not pay the full amount of each monthly payment on the date it is due, [borrower] will be in default." Dkt. No. 1-3 § 6(B). According to the Diaz Affidavit, Jorge Trejo "defaulted on the loan by failing to make monthly payments due on April 1, 2022 and continuing to present." Dkt. No. 23-3 ¶ 6; *see also* Dkt. No. 10.

Finally, Plaintiff has now established compliance with RPAPL §§ 1304 and 1306. RPAPL § 1304 requires a foreclosure plaintiff to give a borrower at least 90 days' notice prior to commencing a foreclosure action. The notice must contain certain statutorily-prescribed information and be sent by registered or certified mail and also by first-class mail to the borrowers'

13

last known address and to the residence that is the subject of the mortgage.  *Id.* § 1304(2).  Within three business days of mailing such notice, the plaintiff must file certain information about the proposed legal action with the superintendent of financial services.  *See* RPAPL § 1306(1).

Compliance with RPAPL § 1304 and § 1306 is a condition precedent to the commencement of a foreclosure action, and the plaintiff bears the burden of establishing compliance with these provisions.  *See, e.g.*, *CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021) ("Proper service of [an] RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." (alterations in original) (quoting *Deutsche Bank Na'l Tr. Co. v. Spanos*, 102 A.D.3d 909, 910 (2d Dep't 2013)); *Freedom Mortg. Corp. v. Brocking*, No. 23-CV-01870 (DLI) (LGD), 2024 WL 436531, at *4 (E.D.N.Y. Feb. 5, 2024) ("Plaintiff must also abide by the strict procedures set forth in the RPAPL."); *Freedom Mortg. Corp. v. Bullock*, No. 19-CV-664 (NGG) (SJB), 2022 WL 18299810, at *3 (E.D.N.Y. Mar. 11, 2022) (denying default judgment based on plaintiff's failure to establish compliance with RPAPL §§ 1304 and 1306), *report and recommendation adopted*, 2022 WL 4445399 (E.D.N.Y. Sept. 23, 2022).

A lender can establish compliance with RPAPL § 1304 in one of two ways: (1) if the "notice or other document was sent through evidence of actual mailing (*e.g.*, an affidavit of mailing or service)"; or (2) "by proof of a sender's routine business practice with respect to the creation, addressing, and mailing of documents of that nature."  *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 556 (2021) (citations omitted).  Under the second method, a "lender may create a rebuttable presumption that it complied with § 1304 by submitting 'proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by someone

with personal knowledge of the procedure.'" *Schiffman*, 999 F.3d at 116 (quoting *Citibank, N.A. v. Conti-Scheurer*, 172 A.D.3d 17, 21 (2d Dep't 2019)).

Here, Plaintiff alleges in the complaint that it complied with RPAPL §§ 1304 and 1306. *See* Dkt No. 1 ¶ 13. Plaintiff also submits the Diaz Affidavit, wherein Diaz attests to her personal knowledge of Plaintiff's ordinary business practices in the creation, addressing, and mailing of RPAPL notices. *See* Dkt. No. 23-3. According to Diaz, it is Plaintiff's "standard business practice and procedure to generate notices of default addressed to the mortgagor(s) at the last known address provided by the mortgagor(s) as contained in Plaintiff's computer system. . . . The standard practice and procedure is that each notice is to be printed, inserted into an envelope that is already affixed with the proper prepaid postage and then placed into the care and custody of the United [S]tates Postal Service for delivery." *Id.* ¶ 8. Copies of the 90-day notices are attached to the Diaz Affidavit. *Id.* at 21-60. Plaintiff also attaches the USPS tracking information, which shows that the notices were mailed on May 21, 2022. *Id.* at 63-66.

The notices comply with the requirements set forth in RPAPL § 1304 and were timely mailed more than 90 days before this action commenced on November 22, 2022. *See id.* As noted above, following Plaintiff's filing of the Beltz Declaration, the Court now agrees that the 90-day notice was properly served at the last known address of the borrower and to the residence that is subject to the mortgage. *See* Dkt. No. 27-1; *see also* Dkt. Nos. 23-3 ¶ 9. Plaintiff has therefore established compliance with RPAPL § 1304. *See Freedom Mortg. Corp. v. D'Amato*, No. 22-CV-7804 (HG) (SJB), 2024 WL 1051129, at *3 (E.D.N.Y. Jan. 22, 2024) (finding that plaintiff complied with RPAPL § 1304 by providing an affidavit detailing its standard procedure for

mailing notices and attaching copies of the notices with proof of mailing), *report and recommendation adopted*, 2024 WL 662486 (E.D.N.Y. Feb. 17, 2024).[4]

Plaintiff has also established compliance with RPAPL § 1306 by submitting a "proof of filing statement" from the New York State Department of Financial Services, which lists Jorge Trejo as the borrower and indicates that the notice was filed on May 23, 2022.  Dkt. No. 23-3, at 61; *see Freedom Mortg. Corp. v. King*, No. 19-CV-4833 (NGG) (LB), 2020 WL 9813020, at *3 (E.D.N.Y. Apr. 28, 2020) (finding that plaintiff complied with RPAPL § 1306 by submitting a copy of the notice submitted to the Department of Financial Services), *report and recommendation adopted in part*, 2023 WL 3494738 (E.D.N.Y. May 17, 2023).

Accordingly, Plaintiff has established a *prima facie* case for foreclosure, and this Court respectfully recommends that Plaintiff's motion for default judgment be granted against the Trejos.

### B.    Nominal Liability

RPAPL § 1311 provides that "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff" shall be joined as a necessary party to a foreclosure action.  RPAPL § 1311(3).  "This rule "derives from the underlying objective of foreclosure actions—to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale."  *Bank of Am., N.A. v. 3301 Atl., LLC*, No. 10-CV-5204 (FB) (SMG), 2012 WL 2529196, at *14 (E.D.N.Y. June 29, 2012) (quoting *N.C. Venture I, L.P. v. Complete Analysis, Inc.*, 22 A.D.3d 540, 542-43 (2d Dep't 2005)).

---

[4] Given that the Court now finds that Plaintiff has complied with the requirements set forth in RPAPL § 1304, the Court need not address Plaintiff's arguments raised in Dkt. No. 27 regarding Defendants' alleged waiver of an affirmative defense related to RPAPL § 1304.

Entry of "[d]efault judgment against non-mortgagor defendants is generally appropriate where the complaint alleges 'nominal liability,' meaning that 'any judgments or liens a defendant may have against the property are subordinate to the plaintiff's lien.'"  *Windward Bora LLC v. Baez*, No. 19-CV-5698 (PKC) (SMG), 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020) (citations omitted).  "When a default judgment is entered against a defendant with a 'nominal interest' in a property, any such interest in the relevant property is terminated."  *Id.* (internal quotations and citation omitted).  But "[w]here a necessary party is not joined, that 'party's rights are unaffected by the judgment of foreclosure and sale.'"  *3301 Atl., LLC*, 2012 WL 2529196, at *14 (quoting *In re Oligbo*, 328 B.R. 619, 640 (Bankr. E.D.N.Y. 2005)).

Here, Plaintiff names the City Defendants as nominal defendants in the complaint.  Dkt. No. 1 ¶ 3.  Plaintiff also seeks to add Midland Credit Management Inc. ("Midland") as an additional nominal defendant through a stipulation signed by Plaintiff and Midland.  *See* Dkt. No. 23-20.

### 1.    City Defendants

Because City Defendants are city agencies, the Court must apply a heightened pleading standard to the complaint when assessing their nominal liability.  *See* RPAPL § 202-a; *see also See Freedom Mortg. Corp. v. McLain*, No. 23-CV-1309 (FB) (LB), 2023 WL 8473948, at *4 (E.D.N.Y. Oct. 12, 2023) (applying heightened pleading standard to the City Defendants), *report and recommendation adopted*, 2023 WL 7320257 (E.D.N.Y. Nov. 7, 2023).  Under this heightened pleading standard, "[t]he complaint must allege 'detailed facts showing the particular nature of the interest in or lien on the real property and the reason for making the state or city agency a party-defendant.'"  *Windward Bora, LLC v. Thompson*, No. 18-CV-1811 (NGG) (RML), 2020 WL 1242828, at *5 (E.D.N.Y. Mar. 16, 2020)  (quoting RPAPL §§ 202(1), 202-a(1)).

17

"If the lien exists 'by virtue of a judgment,' and the defendant is a state agency, the complaint must include 'the name of the court, date recorded, clerk's office in which filed, and names of the parties against whom and in whose favor the judgment was recorded.'" *Id.* (alteration omitted) (quoting RPAPL § 202(2)). "If the defendant is a city agency, the complaint must include that same information, as well as 'a brief description of the grounds for or the nature of such judgment.'" *Id.* (quoting RPAPL § 202-a(2)). In addition, the plaintiff must substantiate their allegations with documentation, such as a title report. *See, e.g.*, *Baez*, 2020 WL 4261130, at *4 (collecting cases). "Conclusory allegations that an entity is the holder of a lien encumbering the property, which is subject and subordinate to the plaintiff's mortgage, are insufficient." *Miami Home, LLC v. Ahmed*, No. 22-CV-1607 (FB) (JRC), 2023 WL 2189301, at *5 (E.D.N.Y. Feb. 8, 2023) (citation omitted), *report and recommendation adopted*, 2023 WL 2187486 (E.D.N.Y. Feb. 23, 2023).

Here, Plaintiff alleges, in boilerplate fashion, that City Defendants are judgment creditors with some interest or lien subordinate to the Mortgage. *See* Dkt. No. 1 ¶ 3. While the complaint references an Exhibit B, which purports to set forth the "[t]he reason for naming said defendants," (*id.*), the document attached as Exhibit B merely reiterates the City Defendants' status as purported "judgment creditors" (Dkt. No. 1-2, at 1). Buried 152 pages into Plaintiff's motion, however, is a list of purported parking violations issued against the Trejos. *See*, Dkt. No. 23-11 at 152-53. This list is sufficient to establish PVB's nominal liability. *See Cit Bank v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7422348, at *6 (E.D.N.Y. Sept. 25, 2015) (finding that plaintiff had demonstrated NYC PVB's nominal liability by submitting documents showing monies owed on parking violations), *report and recommendation adopted*, 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015).

Plaintiff has otherwise failed to satisfy RPAPL § 202-a's heightened pleading standard with respect to ECB and TAB. *See McLain*, 2023 WL 8473948, at *4 ("Absent title searches or some other evidentiary documentation reflecting monies owed by the mortgager defendant to the non-mortgagor defendants, plaintiff has not sufficiently pled a claim against these defendants under New York State law." (cleaned up)); *Gustavia Home, LLC v. Lawrence*, No. 16-CV-4010 (SJ) (SMG), 2017 WL 4404434, at *4 (E.D.N.Y. June 22, 2017) (denying default judgment and dismissing claims against nominal city agency defendants without prejudice where plaintiff failed to meet the heightened pleading requirements of Section 202-a).

Accordingly, this Court respectfully recommends that Plaintiff's motion for default judgment be granted against PVB but denied against ECB and TAB. This Court further respectfully recommends that Plaintiff's claims against ECB and TAB be dismissed without prejudice. *See McLain*, 2023 WL 8473948, at *4. As noted above, Plaintiff consents to the dismissal of [] ECB and [] TAB, as said parties do not currently show any lien of record." Dkt. No. 27 at 1.

### 2. Midland Credit Management Inc.

Plaintiff seeks to add Midland as a nominal defendant based on a judgment recorded against the Property on December 9, 2022 in the amount of $3,822.94. *See* Dkt. Nos. 23-19 - 23-20.

Although Midland was not named as a nominal defendant in the complaint, on July 28, 2023, Plaintiff and Midland signed a stipulation, wherein Midland "appear[ed] in this foreclosure action, consent[ed] to being named a party defendant in this action, and consent[ed] to the jurisdiction of the Court." Dkt. No. 23-20 ¶ 1. Pursuant to the stipulation, Midland "acknowledge[d] that its lien is subordinate to the mortgage being foreclosed herein" and was

"named in this proceeding to extinguish said lien." *Id.* ¶ 2.  Midland also "waive[d] service of all papers and proceedings in this action except Notice of Sale, Referee's Report of Sale and notice of proceedings to obtain surplus monies." *Id.* ¶ 3.

Based on this stipulation and Midland's status as a necessary party pursuant to RPAPL § 1311(3), this Court respectfully recommends that Midland be added as a defendant and that a default judgment also be entered against Midland.

"Courts in this district have found that entry of default judgment is appropriate where the complaint alleges nominal liability—*i.e.*, that any judgments the Defaulting Defendants may have against [the debtor] . . . are subordinate to the [plaintiff's] lien." *United States v. Salten*, No. 03-CV-578 (JS) (ARL), 2017 WL 9511083, at *2 (E.D.N.Y. Feb. 17, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 945089 (E.D.N.Y. Mar. 10, 2017).  Here, Midland's judgment is subordinate to the Mortgage.  Dkt. No. 23-20 ¶ 2.  Moreover, Midland has waived service of all papers except notice of the sale and notice of proceedings as to surplus monies.  *Id.* ¶ 3.

Accordingly, this Court respectfully recommends that a default judgment be entered against Midland.  *See Salten*, 2017 WL 9511083, at *4 (recommending that nominal defendant be added to the case pursuant to a stipulation between the parties and that a default judgment be entered against the nominal defendant).

**VII.    Judgment of Foreclosure and Sale**

Before turning to Plaintiff's request for damages, the Court considers Plaintiff's request for a judgment of foreclosure and sale.

"Under New York law, a plaintiff is entitled to foreclosure as a matter of law through the production of the mortgage, the unpaid note, and evidence of default." *OneWest Bank, N.A. v.*

*Hawkins*, No. 14-CV-4656 (NGG), 2015 WL 5706945, at *6 (E.D.N.Y. Sept. 2, 2015) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2015 WL 5706953 (E.D.N.Y. Sept. 28, 2015).  By presenting the Mortgage, Note, and proof of default on those instruments, Plaintiff has established a presumptive right to foreclose on the Property, and the Trejos have not appeared to overcome this *prima facie* showing.  *See id.*; *D'Amato*, 2024 WL 1051129, at *7; *see also Nationstar Mortg. LLC v. Mullany*, No. 16-CV-5501 (ADS) (AYS), 2018 WL 4658437, at *5 (E.D.N.Y. Sept. 11, 2018), *report and recommendation adopted*, 2018 WL 4637352 (E.D.N.Y. Sept. 27, 2018).

Accordingly, this Court respectfully recommends that Plaintiff's request for a judgment of foreclosure and sale be granted.  This Court further respectfully recommends that, pursuant to Plaintiff's request, Andrea S. Ferrante, Esq. be appointed as Referee to effectuate the foreclosure and sale of the Property, and that a referee fee be paid in the sum of $750.00 from the proceeds of the sale.  Dkt. No. 23-1, at 3-4; *see also* CPLR § 8003(b) ("A referee's compensation, including commissions, upon a sale pursuant to a judgment in any action cannot exceed seven hundred fifty dollars[.]"); *D'Amato*, 2024 WL 1051129, at *7 (recommending appointment of plaintiff's proposed referee and finding $750.00 proposed fee reasonable); *Brown*, 2022 WL 875100, at *7 (appointing plaintiff's proposed referee and approving a $750.00 fee as reasonable).

The Court also agrees with Plaintiff that "[i]n the event a scheduled sale is cancelled or postponed by a person or entity other than the Referee, pursuant to CPLR § 8003(a) the plaintiff shall pay to the Referee the sum of $250.00 for each adjournment or cancellation," with "[s]uch compensation may be recouped from the proceeds of sale as a cost to plaintiff."  Dkt. No. 23-1, at 4-5.  The Court agrees with Plaintiff that "[n]o compensation totaling in excess of $1,100.00, including compensation authorized pursuant to CPLR §8003(a) for computation of the sum due to

plaintiff, may be accepted by the Referee without Court approval." *Id.*; *see, e.g., Wilmington Tr., Nat'l Ass'n as Tr. for Registered Holders of Wells Fargo Com. Mortg. Tr. 2015-NXS2, Com. Mortg. Pass-Through Certificates, Series 2015-NXS2 v. Winta Asset Mgmt. LLC*, No. 20-CV-05309 (JGK), 2024 WL 2057238, at *2 (S.D.N.Y. May 6, 2024) ("In the event a scheduled sale is cancelled or postponed, pursuant to CPLR § 8003(a), Plaintiff shall compensate the Referee in the sum of $250.00 for each adjournment or cancellation unless the Referee has requested the delay."); *Freedom Mortg. Corp. v. Redman*, No. 3:22-CV-875 (TJ) (ML), 2023 WL 6283066, at *2 (N.D.N.Y. Sept. 25, 2023) ("If the scheduled sale is cancelled or postponed by a person other than the Referee, the Plaintiff shall pay $250 to the Referee.").

**VIII.  Damages**

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.  "Rather, the Court must be satisfied that Plaintiff has met the burden of proving damages to the Court with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (internal quotation marks, alterations, and citation omitted).  "Although requests for damages are usually established by the plaintiff in an evidentiary hearing, the court can make such a determination without a hearing when supported by sufficiently detailed affidavits and documentary evidence." *Brown*, 2022 WL 875100, at *4 (citation omitted).

Here, Plaintiff seeks a total of $446,294.48 in damages from the proceeds of the sale of the Property, consisting of: (1) $438,707.48 due on the Note; (2) $5,650.00 in attorneys' fees; and (3) $1,937.00 in costs and disbursements in this action to be taxed by the Clerk, with interest from the date thereof.  Dkt. 23-1, at 5-6.  Plaintiff also seeks "[t]he reasonable expenses of the sale of the

property, including the cost of  advertising as shown on the bills presented and certified by the Referee to be correct, copies of which shall be annexed to the Report of Sale." *Id.* at 5.  In the event the proceeds of the sale of the Property are insufficient to cover these amounts, Plaintiff seeks "[a] deficiency judgment against Jorge Trejo, to the extent allowed by law, for the amount that remains due after distribution of the sale proceeds, unless the debt was discharged in a bankruptcy or is otherwise uncollectible, be granted if requested by Plaintiff."[5]  Dkt. No. 1, at 4; *see also* Dkt. No. 23-1, at 7.

As set forth below, this Court respectfully recommends that Plaintiff be awarded: (1) a total of $420,900.19 on the Note and Mortgage; (2) per-diem interest at a rate of $32.81 from December 7, 2023 until the date judgment is entered; (3) $2,825.00 in attorneys' fees; (4) $1,937.00 in costs; (5) certain sale-related expenses; and (6) post-judgment interest.  This Court further recommends that the foregoing amounts be deducted from the proceeds of the sale of the Property.  *See Nationstar Mortg. LLC v. McCarthy*, No. 16-CV-3063 (ADS) (AYS), 2019 WL 5694333, at *7 (E.D.N.Y. July 26, 2019) (recommending that the subject property be foreclosed upon and sold with the proceeds being applied to the outstanding amount owed on the note), *report and recommendation adopted*, 2019 WL 3798048 (E.D.N.Y. Aug. 13, 2019); *OneWest Bank, N.A. v. Denham*, No. 14-CV-5529 (DRH)  (AKT), 2015 WL 5562980, at *14 (E.D.N.Y. Aug. 31, 2015) (same), *report and recommendation adopted*, 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015).

In addition, if the proceeds from the sale of the Property are insufficient to cover the above amounts, this Court respectfully recommends that Plaintiff is permitted to request a deficiency

---

[5] In the complaint, Plaintiff seeks "[a] deficiency judgment against Jorge Trejo, to the extent allowed by law, for the amount that remains due after distribution of the sale proceeds[.]"  Dkt. No. 1, at 4.  The requested relief in Plaintiff's motion for default judgment, however, is not similarly limited.  *See* Dkt. No. 23-1, at 7 ("if the proceeds of the sale are insufficient to pay the amount reported by the Referee as due to plaintiff, the plaintiff may apply to the Court to recover the whole or such part of the deficiency as prescribed by RPAPL § 1371").

23

judgment against Jorge Trejo.  *See* RPAPL § 1371; *Courchevel 1850 LLC v. Pinto-Bedoya*, No. 16-CV-6716 (NGG), 2017 WL 5157451, at *2 (E.D.N.Y. Nov. 7, 2017) (explaining that plaintiff could file a motion to obtain a deficiency judgment after the property is sold (citation omitted)).

### A.    Amount Due on the Note

On a motion for default judgment, "any determination of default damages should be determined under the terms of the Note[ ] and Mortgage[ ]."  *Builders Bank v. Rockaway Equities, LLC*, No. 08-CV-3575 (MDG), 2011 WL 4458851, at *5 (E.D.N.Y. Sept. 23, 2011); *see also Vermont Teddy Bear Co. Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) ("when parties set down their agreement in a clear, complete document, their writing . . . should be enforced according to its terms." (quotations omitted)).

Here, Plaintiff seeks a total of $438,707.48 in damages due on the Note, comprised of the following:

| | |
|---|---|
| Principal Balance | $399,152.89 |
| Interest from March 1, 2022 to December 6, 2023 at 3.0% rate | $21,119.52 |
| Total Escrow Advances | $17,089.87 |
| Mortgage Insurance Premium | $717.42 |
| Property Inspections | $155.00 |
| Late Charges Prior to Acceleration | $472.78 |
| Total | $438,707.48 |

Dkt. Nos. 23-1, 23-3 ¶ 12.

### 1.    Unpaid Principal Balance

Plaintiff requests the unpaid principal balance of $399,152.89.  *See* Dkt. Nos. 23-1, 23-3 ¶ 12.  Pursuant to the Loan Modification Agreement, Jorge Trejo agreed to pay $400,529.47 in principal.  Dkt. No. 1-6 § 3.  According to the terms of the Note, in the event of default, Plaintiff may require immediate payment in full of the principal and interest.  Dkt. No. 1-3 § 6(C).

24

Diaz certifies that at the time of default on April 1, 2022, the outstanding principal balance on the Note was $399,152.89. Dkt No. 23-3 ¶ 6. Plaintiff's supporting documents establish that Jorge Trejo failed to make payments on the unpaid principal balance after April 1, 2022. *See* Dkt. No. 23-3, at 11-14; *see also McLain*, 2023 WL 8473948, at *5 (collecting cases where the mortgage and plaintiff's affidavit were sufficient to establish amount of unpaid principal).

This Court therefore recommends that Plaintiff be awarded the unpaid principal balance of $399,152.89.

### 2.    Interest

Plaintiff requests $21,119.52 in accrued interest from March 1, 2022 to December 6, 2023. *See* Dkt. Nos. 23-1, 23-3 ¶ 12.

The Loan Modification Agreement provides that interest accrues on the unpaid principal balance at a rate of 3% per year. Dkt. No. 1-6 § 3(D). Applying the 3% annual interest rate to the unpaid principal balance of $399,152.89, interest accrues at a daily rate of $32.81.[6] There are 646 days between March 1, 2022 through December 6, 2023. The total interest is thus calculated as follows: 646 days multiplied by $32.81 per day, equaling $21,195.26.

Plaintiff does not explain how it calculated the $21,119.52 that it requests in accrued interest. This Court has performed the calculations, and the total interest accrued between March 1, 2022 through December 6, 2023 is higher than what Plaintiff proposes ($21,195.26). Absent a breakdown of Plaintiff's calculations, this Court cannot identify the reason for the discrepancy between Plaintiff's requested interest and this Court's calculations. Because the amount requested

---

[6] "Daily interest is calculated as follows: daily interest rate = (outstanding principal [multiplied by] interest rate per annum)/365 days." *CIT Bank, N.A. v. Seeram*, No. 16-CV-2608 (RRM) (LB), 2017 WL 8220204, at *5 n.11 (E.D.N.Y. Feb. 15, 2017) (citation omitted), *report and recommendation adopted*, 2018 WL 1308003 (E.D.N.Y. Mar. 13, 2018). Here, the daily interest rate is calculated as follows: ($399,152.89 multiplied by .03) / 365 = $32.81 per day.

by Plaintiff is lower than the Court's calculations, this Court respectfully recommends that Plaintiff be awarded the amount of interest that it requested.  *See McLain*, 2023 WL 8473948, at *6 ("While the requested amount is less than the Court's calculated interest amount, I recommend that the Court award the amount that plaintiff has requested.").

Accordingly, this Court respectfully recommends that Plaintiff be awarded $21,119.52 in interest due as of December 6, 2023, plus additional interest at a rate of $32.81 per day from December 7, 2023 until the Court enters judgment.

### 3.   Escrow Advances

Plaintiff also seeks to recover escrow advances totaling $17,089.87.  *See* Dkt. Nos. 23-1, 23-3 ¶ 12.

Courts have awarded escrow reimbursement where a plaintiff provides an affidavit explaining the escrow charges along with a detail history.  *See, e.g.*, *McLain*, 2023 WL 8473948, at *6 ("According to Diaz, these escrow advances correspond with costs incurred to obtain insurance for the property and pay taxes related to the property."); *ARCPRE Holding, LLC v. 9Q4U5E LLC*, No. 19-CV-6417 (DLI) (RER), 2022 WL 2467085, at *4 (E.D.N.Y. Apr. 15, 2022) ("Although the 'escrow advances' schedule does not specifically indicate that the disbursements were made in order to insure the property, Olson's sworn affidavit sufficiently explains the purpose of these disbursements such that an award of insurance costs is warranted.").

Here, Plaintiff fails to explain the requested escrow balance or provide supporting documentation to establish its entitlement to the requested amount of $17,089.87.  This Court has reviewed the documents attached to the Diaz Affidavit, and the only references to "escrow" are on what purports to be an account statement, dated November 6, 2023, that shows a current escrow balance of "-16058.98."  Dkt. No. 23-3, at 11.  The same document shows the "YTD" escrow as

26

"7946.40."  *Id.*  The other documents filed by Plaintiff in connection with its motion, most of which are not referenced by Plaintiff in its memorandum of law, do not shed any further light on Plaintiff's request.

Without any additional information to substantiate Plaintiff's request for escrow advances in the amount of $17,089.87, this Court cannot award Plaintiff this request.  *See D'Amato*, 2024 WL 1051129, at *5 (recommending that plaintiff's request for escrow advances be denied because "Diaz does not explain why the escrow advances are owed under the Note and Mortgage and does not explain the Detail History"); *Ditech Fin. LLC v. Durdu*, No. 19-CV-977 (MKB) (LB), 2020 WL 8413566, at *5 (E.D.N.Y. Aug. 24, 2020) (recommending that plaintiff's request for escrow advances be denied without prejudice because "the Court [was] unable to verify when the[] disbursements were made and the total amounts allegedly due to plaintiff"), *report and recommendation adopted*, 2021 WL 194041 (E.D.N.Y. Jan. 20, 2021).

This Court therefore respectfully recommends that Plaintiff's request for escrow advances in the amount of $17,089.87 be denied at this time, with the right to renew within 30 days of the Court's ruling on the present Report and Recommendation if Plaintiff can produce supporting documentation.  *See D'Amato*, 2024 WL 1051129, at *5; *see D'Amato*, 2024 WL 662486, at *3 ("The Court agrees, and Plaintiff does not argue otherwise, that the documents Plaintiff submitted in connection with its default judgment motion are insufficient to support the damages it seeks for the escrow advances and property inspection fees. The Court hereby rejects Plaintiff's objections to Judge Bulsara's R&R and denies Plaintiff's request for $33,288.91 in escrow advances [], without prejudice and with the right to renew the motion on or before March 4, 2024.").

### 4.   Mortgage Insurance Premium

Plaintiff also requests $717.42 for mortgage insurance premium.  *See* Dkt. Nos. 23-1, 23-3 ¶ 12.  Here too, the Court is unable to find documents in Plaintiff's motion papers supporting an explanation for this amount.  Plaintiff has therefore failed to show an entitlement to this amount. *See Mullany*, 2018 WL 4658437, at *5 (recommending that plaintiff's request for mortgage insurance premiums be denied due to plaintiff's failure to submit documentation evidencing the requested amount).

Accordingly, this Court respectfully recommends that Plaintiff's request for mortgage insurance premium in the amount of $717.42 should be denied.

### 5.   Property Inspection Fees

Plaintiff requests $155.00 for property inspection fees.  *See* Dkt. Nos. 23-1, 23-3 ¶ 12. According to the terms of the Mortgage, Plaintiff is entitled to "fees for services performed in connection with [the borrower's] default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including . . .  property inspection . . . fees." Dkt. No. 1-4 § 13.

In support of this request, Plaintiff submits a fee log that includes, *inter alia*, individual property inspection fees, the fee amounts, and the dates assessed. Dkt. No. 23-3, at 7.  The property inspection fees charged total $155.00.  This log is sufficient to establish Plaintiff's entitlement to property inspection fees.  *See McLain*, 2023 WL 8473948, at *7 (awarding plaintiff property inspection fees based on fee log reflecting such charges).  Accordingly this Court respectfully recommends that Plaintiff be awarded $155.00 in property inspection fees.

### 6. Late Charges Prior to Acceleration

Plaintiff also requests $472.78 for late charges prior to acceleration. *See* Dkt. Nos. 23-1, 23-3 ¶ 12. The Note states that if a monthly payment is more than fifteen days late, the borrower must pay a late charge of 4.000% of the amount overdue of principal and interest. *See* Dkt. No. 1-3 § 6(A).

In support of this request, Plaintiff submits a "Late Charge Detail Panel" showing the eight dates in which late charges were assessed between March 17, 2022 and October 16, 2022. Dkt. No. 23-3, at 10. Each late charge totals $67.54, and Plaintiff's records indicate that one payment of $67.54 was made on March 31, 2022, leaving a remaining balance of $472.78. *Id.* This documentation is sufficient to establish Plaintiff's entitlement to late fees in the amount of $472.78. *See King*, 2020 WL 9813020, at *6 (recommending that plaintiff be awarded late charges based on submission of note and log showing the assessed late charges)..

Accordingly, the Court respectfully recommends that Plaintiff be awarded $472.78 in late charges.

### 7. Total Calculations

In light of the above, this Court respectfully recommends the below revisions to Plaintiff's request for damages on the amount due on the Note:

|  | Plaintiff's Request | This Court's Recommendation |
|---|---|---|
| Principal Balance | $399,152.89 | $399,152.89 |
| Interest from March 1, 2022 to December 6, 2023 at 3.0% rate | $21,119.52 | $21,119.52 |
| Total Escrow Advances | $17,089.87 | $0 |
| Mortgage Insurance Premium | $717.42 | $0 |
| Property Inspections | $155.00 | $155.00 |
| Late Charges Prior to Acceleration | $472.78 | $472.78 |
| Total | $438,707.48 | $420,900.19 |

B.       **Attorneys' Fees**

Plaintiff also seeks attorneys' fees in the amount of $5,650.00.  *See* Dkt. No. 23-1, at 5; *see also* Dkt. No. 23-17.  "A plaintiff in a foreclosure action may recover attorneys' fees and costs against a borrower-defendant if the note or mortgage provides for such an award."  *See U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Swezey*, No. 20-CV-91 (FB) (RLM), 2022 WL 1422841, at *10 (E.D.N.Y. Mar. 24, 2022), *report and recommendation adopted*, 2022 WL 2390989 (E.D.N.Y. July 1, 2022).

Here, the Note provides that in the event of default, "the Note Holder will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note . . . includ[ing], for example, reasonable attorneys' fees." Dkt. No. 1-3 § 6(e).  In addition, the Mortgage states that, "Lender will have the right to collect all costs allowed by law, including, but not limited to reasonable attorneys' fees[.]"  Dkt. No. 1-4 § 24.

In support of Plaintiff's request for attorneys' fees, Plaintiff submits a declaration from its attorney, Robert Temaroli, Esq., explaining that he charges a "flat fee for foreclosure work," and as such, "individual time sheets are not maintained."  Dkt. No. 23-17 ¶ 6.  In lieu of time records, Plaintiff submits a list of services that were performed in connection with this action.  *Id.*

"[C]ontemporaneous time records are a prerequisite for attorney's fees in this Circuit." *N.Y. State Ass'n for Ret. Child., Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983).  "Courts in this District have denied fee requests where plaintiff failed to maintain contemporaneous time records." *McLain*, 2023 WL 8473948, at *8 (collecting cases).  But "with flat fee arrangements becoming more common, several courts have recognized attorney's fees can be awarded without contemporaneous time records." *Id.* (collecting cases).  Indeed, in similar cases involving the same plaintiff and the same counsel, courts in this district have recommended awarding attorneys' fees

based on the record and declaration provided.  *See, e.g.*, *D'Amato*, 2024 WL 1051129, at *6; *McLain*, 2023 WL 8473948, at *8.

Significantly, however, "in light of counsel's failure to provide contemporaneous time records, and the inauspicious quality[7] of plaintiff's motion," courts have also recommended that the same attorneys' fees be reduced to 50% of the requested amount.  *D'Amato*, 2024 WL 1051129, at *6 (quoting *McLain*, 2023 WL 8473948, at *8); *see also Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, No. 14-CV-5207 (KAM) (JO), 2016 WL 4179943, at *6 (E.D.N.Y. Aug. 5, 2016) (reducing attorney's flat fee request for lack of contemporaneous time records).

Here, Plaintiff has established its entitlement to attorneys' fees pursuant to the terms of the Note and Mortgage.  But due to the same issues present in *D'Amato* and *McLain*, this Court respectfully recommends that Plaintiff be awarded $2,825.00, which represents 50% of the requested attorneys' fees.

### C.      Costs Incurred to Enforce the Note and Mortgage

Plaintiff seeks $1,937.00 in costs.  *See* Dkt. Nos. 23-1, 23-16.  As indicated above, the Note provides that in the event of default, "the Note Holder will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note[.]"  Dkt. No. 1-3 § 6(e).  The Mortgage also states that  "Lender will have the right to collect all costs allowed by law[.]"  Dkt. No. 1-4 § 24.

In support of Plaintiff's request for costs, Plaintiff submits a Bill of Costs that itemizes the costs requested, which include $402.00 in federal filing fees, $1,380.00 in service of process fees, $120.00 for skip traces, and $35.00 for the fees associated with the notice of pendency.  Dkt. No. 23-16, at 1.  Plaintiff also attaches invoices or proof of payment for these fees.  *See id.* at 27.  This

---

[7] Indeed, Plaintiff's counsel appears to request less than the Court's calculated interest amount in at least one of the categories listed above.

Court finds that these costs are reasonable. *See D'Amato*, 2024 WL 1051129, at *6 (finding that request for costs for filing fee, service of process fees, and notice of pendency filings were reasonable); *McLain*, 2023 WL 8473948, at *8 (granting costs for federal filing fee, service of process, and notice of pendency filings).

Therefore, this Court respectfully recommends that Plaintiff be awarded $1,937.00 in costs.

## D.    Other Costs

Plaintiff also asks the Court to award certain other costs from the foreclosure and sale of the Property.  Namely, Plaintiff requests "[t]he reasonable expenses of the sale, including the cost of advertising as shown on the bills presented and certified by the Referee to be correct, copies of which shall be annexed to the Report of Sale." Dkt. No. 23-1, at 5.

In granting an order of default judgment, courts are not permitted to award damages that exceed what the plaintiff requested in its complaint.  *See Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 121 (E.D.N.Y. 2013).  Plaintiff seeks an award of "the expenses of [the] sale" of the Property in its complaint but does not specifically reference advertising expenses.  *See* Dkt. No. 1, at 4.  Nonetheless, this Court finds that the phrase "the expenses of the sale" logically includes advertising expenses for the sale, and thus recommends finding that Plaintiff may receive this award.  Other courts in this district have explicitly granted this award in prior cases.  *See, e.g.*, *Baez*, 2020 WL 4261130, at *6 (collecting cases).

Accordingly, this Court respectfully recommends that Plaintiff is permitted to recoup the sale-related expenses it requests.

## E.    Post-Judgment Interest

Plaintiff also seeks post-judgment interest at the statutory rate until the date of transfer of title.  *See* Dkt. No. 23-1, at 5.  Plaintiff is entitled to post-judgment interest as of right.  *See* 28

U.S.C. § 1961.  Indeed, "[t]he very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered."  *Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011).

Accordingly, this Court respectfully recommends that Plaintiff be awarded post-judgment interest at the current legal rate allowed and accruing under 28 U.S.C. § 1961(a), from the date of the entry of judgment in this case until the date of transfer of title to the Property.

**F.    Deficiency Judgment**

In the event the proceeds of the sale are insufficient to cover the foregoing amounts, this Court respectfully recommends that Plaintiff be granted leave to obtain a deficiency judgment after the foreclosure sale has been consummated.  RPAPL § 1371, which governs deficiency judgments, states, in relevant part:

> If a person who is liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the action, and has appeared or has been personally served with the summons, the final judgment may award payment by him of the whole residue, or so much thereof as the court may determine to be just and equitable, of the debt remaining unsatisfied, after a sale of the mortgaged property and the application of the proceeds, pursuant to the directions contained in such judgment, the amount thereof to be determined by the court as herein provided.

RPAPL § 1371(1).  Thus, under this provision, a plaintiff "must file a separate motion after the foreclosure sale has been consummated" to obtain a deficiency judgment.  *Courchevel 1850 LLC*, 2017 WL 5157451, at *2 (citing RPAPL § 1371)); *see generally*, *U.S. Bank Nat'l Ass'n as Tr. for Registered Holders of Wells Fargo Com. Mortg. Sec., Inc., Multifamily Mortg. Pass-Through Certificates, Series 2019-SB63 v. 1078 Whillmore LLC*, No. 23-CV-8245 (KAM) (TAM), 2024 WL 3302375, at *9 (E.D.N.Y. July 3, 2024).

While Plaintiff should be granted leave to seek a deficiency judgment against Jorge Trejo, Plaintiff should not be permitted to obtain a deficiency judgment against Maribel Trejo. Plaintiff has not established that Maribel Trejo is personally liable for the sums due under the Note.[8] *See Swezey*, 2022 WL 1422841, at *8 (E.D.N.Y. Mar. 24, 2022) ("As an initial matter, plaintiff wholly fails to address why damages are appropriately sought against both defendants, thereby failing to meet its burden at the default judgment stage.").

First, Maribel Trejo did not sign the Note, only Jorge Trejo did. *See* Dkt. No. 1-3. While Maribel Trejo signed the Loan Modification Agreement (which extended the credit limit to be secured by the Mortgage), and is therefore considered a "co-signer" under the terms of the Mortgage, she did not sign the Note. *Swezey*, 2022 WL 1422841, at *8 (explaining that co-signer of mortgage who also signed a credit line modification agreement did not sign the underlying note). In addition, according to the terms of the Mortgage, if one of the mortgagors "does not sign the Note" that person is signing the Mortgage only to give their "rights in the Property to Lender under the terms of this Security Instrument," but is not "personally obligated to pay the Sums Secured." Dkt. No. 1-4 § 12. Thus, Maribel Trejo's interest in the Property may be foreclosed upon by virtue of the Mortgage, but she is not obligated to pay back the loan secured by the Mortgage.[9] *See Swezey*, 2022 WL 1422841, at *8 (holding that co-signer of mortgage was not personally liable for deficiency amounts sought by plaintiff because she did not sign the note); *see also Onewest*

---

[8] As explained above, Plaintiff's request for a deficiency judgment in its motion for default judgment is not limited to a deficiency judgment against Jorge Trejo only. *See* Dkt. No. 23-1, at 7.

[9] At best, the Loan Modification Agreement and Mortgage are ambiguous as to whether Maribel Trejo is required to pay back the secured debt or the costs and fees incurred by Plaintiff in connection with this action, and therefore, "the ambiguity should be construed against the drafter," MERS, Plaintiff's predecessor in interest. *See Swezey*, 2022 WL 1422841, at *8 n.15; *see also Warner v. Monsour Winn Kurland & Warner, LLP*, No. 09-CV-3557 (SJF) (ETB), 2011 WL 1399130, at *3 (E.D.N.Y. Feb. 18, 2011) ("[W]here the court finds that a contract is ambiguous, it should be construed against the drafter."), *report and recommendation adopted*, 2011 WL 1403182 (E.D.N.Y. Apr. 8, 2011).

*Bank N.A. v. Louis*, No. 15-CV-00597 (PAC) (BCM), 2016 WL 3552143, at *8 (S.D.N.Y. June 22, 2016) (recommending that any judgment for principal or interest due under the note should be entered against the signatory of the note only and not against the co-signer of the mortgage who did not sign the note), *report and recommendation adopted*, 2016 WL 4059214 (S.D.N.Y. July 28, 2016); *Cit Bank v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7422348, at *2 (E.D.N.Y. Sept. 25, 2015) (same), *report and recommendation adopted*, 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015).

## IX.    <u>Conclusion</u>

For the foregoing reasons, this Court respectfully recommends that Plaintiff's motion for default judgment be granted in part and denied in part and that:

1.    The District Court order the foreclosure and sale of the Property;

2.    The proposed Referee be appointed to conduct the sale and receive a sum of $750.00 from the proceeds of the sale;

3.    Plaintiff be awarded the following amounts from the proceeds of the sale: the principal balance of $399,152.89; $21,119.52 in accrued interest from March 1, 2022 to December 6, 2023; additional interest at a rate of $32.81 per day, beginning from December 7, 2023 until the date judgment is entered; $155.00 for inspection fees; $472.78 for late fees; $2,825.00 in attorneys' fees; and $1,937.00 in costs;

4.    Plaintiff be permitted to deduct from the proceeds of the sale all reasonable expenses of the sale, including the cost of advertising as shown on the bills presented and certified by the Referee to be correct;

5.    Plaintiff's request for escrow advances and mortgage insurance premium be denied;

6.    Plaintiff be awarded post-judgment interest at the statutory rate under 28 U.S.C. § 1961(a) from the date judgment is entered until judgment is satisfied;

7.    If the proceeds of the foreclosure sale are insufficient to pay the amount(s) adjudged, Plaintiff be permitted to seek a deficiency judgment against Jorge Trejo to recover the whole deficiency remaining unsatisfied in accordance with RPAPL § 1371;

8.    Plaintiff's motion for default judgment against PVB be granted and their claim extinguished;

9.    Midland be added as a defendant, default judgment be entered against Midland, and Midland's claim extinguished; and

10.   Plaintiff's motion for default judgment against ECB and TAB be denied, and Plaintiff's claims against ECB and TAB be dismissed without prejudice.

A copy of this Supplemental and Amended Report and Recommendation is being electronically served on counsel. Plaintiff's counsel is directed to serve a copy of this Report and Recommendation on Defendants by overnight mail and first-class mail and file proof of service on ECF by **July 22, 2024**.

Copies shall be served at the following addresses:

Jorge Trejo
105 Cortlandt Street
Staten Island, NY 10302

Maribel Trejo
105 Cortlandt Street
Staten Island, NY 10302

Jorge & Maribel Trejo
542B Buchanan Avenue
Staten Island, New York 10314

New York City Parking Violations Bureau
100 Church Street, 4th Floor
New York, NY 10007

New York City Environmental Control Board
100 Church Street, 4th Floor
New York, NY 10007

New York City Transit Adjudication Bureau
130 Livingston Street
Brooklyn, NY 11201

Midland Credit Management, Inc.
c/o Mitchell Selip
Selip & Stylianou LLP

199 Crossways Park Drive
Woodbury, New York 11797

Any objections to this Supplemental and Amended Report and Recommendation must be filed within 14 days after service of this Supplemental and Amended Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Gujarati.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:       Brooklyn, New York
             July 19, 2024

                                    **SO ORDERED.**

                                     */s/ Joseph A. Marutollo*
                                    JOSEPH A. MARUTOLLO
                                    United States Magistrate Judge